690 So.2d 73 (1997)
Jessica Lambert SHARBINO as Curatrix of Lillie Lambert, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 96-566.
Court of Appeal of Louisiana, Third Circuit.
January 8, 1997.
Rehearing Denied April 8, 1997.
*74 Ralph W. Kennedy, Alexandria, for Jessica Lambert Sharbino Curatrix etc.
David A. Hughes, Alexandria, for State Farm Mutual Automobile Insurance.
Before COOKS, SAUNDERS, AMY, SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
This is a personal injury suit arising from an automobile-pedestrian accident which occurred on April 13, 1994 in Pineville, Louisiana. Between five and six p.m. on that date, the right rear-view mirror of a Honda Accord, driven by defendant, Mark Rayner, struck plaintiff, Lillie Lambert, as she began to cross Crepe Myrtle Street. Mrs. Lambert, who was eighty-six years old at the time of the accident, suffered a fractured left forearm and hip contusions.
Mrs. Lambert, through her curatrix, Jessica Lambert Sharbino, sued Mr. Rayner and his insurer, State Farm Mutual Automobile Insurance Company, alleging Mr. Rayner's fault in causing the accident. In their answer, defendants maintained that Mr. Rayner was not negligent and that the accident was caused solely by Mrs. Lambert in suddenly and unexpectedly stepping in front of Mr. Rayner's car. Alternatively, defendants asserted that Mrs. Lambert was comparatively at fault.
Following a bench trial, the trial court rendered judgment in favor of plaintiff and *75 against defendants for $35,000.00 in pain and suffering and $11,274.17 in medical expenses. In written reasons, the trial court concluded that, because of Mrs. Lambert's old age and senile dementia, a reduced standard of care applied to her duty to yield the right of way to vehicles. The trial court determined that Mrs. Lambert was not contributorily or comparatively at fault because she was "acting as a reasonably prudent person with senile dementia would under these particular circumstances." Furthermore, the trial court held that Mr. Rayner breached his duty to protect pedestrians from the risk of collision and that Mr. Rayner's breach was a cause in fact of the accident.
On appeal, defendants specify as error the trial court's conclusion that Mr. Rayner was negligent and that such negligence was the sole cause of the accident. After thoroughly examining the record, we conclude that the trial court's conclusion with regard to Mr. Rayner's fault is manifestly erroneous. Accordingly, we reverse.

FACTS
Just prior to the accident, Mrs. Lambert and two neighborhood boys were working in her yard. Her house is located at the corner of Crepe Myrtle Street and Lambert Street. Crepe Myrtle Street is a two-way roadway without a centerline separation.
After pruning her rose bushes, Mrs. Lambert carried the clippings in her arms as she walked along the shoulder of Crepe Myrtle Street. She intended to place the clippings on the opposite side of Crepe Myrtle Street so that the clippings would be picked up by the city's sanitation department. As Mrs. Lambert crossed Crepe Myrtle Street, Mr. Rayner's car struck her and knocked her to the ground. She was eventually taken by ambulance to Rapides Regional Medical Center, where she underwent surgery to correct her fractured forearm.
At trial, Mrs. Lambert testified that she did not remember much about the accident. Because of her senile dementia, her testimony was inconsistent and at times confusing. Mrs. Lambert initially said that she was struck while walking back across the street after placing the rose clippings there for the garbage men to take away. She later said that she was hit while trying to cross Crepe Myrtle Street to get to the other side. Then, she stated that she could not recall at what point she was struck. Mrs. Lambert said she did not see Mr. Rayner's car before being hit. She also did not remember anything about Mr. Rayner trying to help her after the accident. She said that Mr. Rayner wanted to leave the scene of the accident and told her that he had not seen her before his car struck her.
Mr. Rayner testified that he is a twenty-three year old Louisiana College student majoring in biology/pre-medicine. He had never seen Mrs. Lambert before the accident; he professed no prior knowledge of her incapacity. He stated that, at the time of the accident, he was on his way from his Crepe Myrtle Street home to a friend's house in Alexandria to study. Mr. Rayner explained that, as he drove over a slight hill, he saw somebody walking up ahead on the side of the street carrying something. He first saw Mrs. Lambert from about 200 feet away walking parallel to Crepe Myrtle Street. The fact that she was carrying bush clippings parallel to the street struck him as odd. Mr. Rayner said that he slowed down his car, which had been traveling between twenty-five and twenty-seven miles per hour, and moved the car to the left a little bit. He said that, when confronted with a pedestrian walking alongside the road, he always naturally reacts by slowing down his car and moving it over to give the pedestrian adequate space. He did not completely change lanes or blow his horn.
Mr. Rayner testified that, "Right as I got there she turned and walked out in front of me." He said he was about seven or eight feet from her when he realized that she walked into the street into the path of his car. He said that he turned his steering wheel sharply to the left and hit his brake pedal. The car did not skid; its passenger side rear-view mirror struck Mrs. Lambert, who landed on the street near the rear of Mr. Rayner's stopped car. He said that Mrs. Lambert gave no indication that she was about to enter the street.
*76 Mr. Rayner said that, when he got out of his car, Mrs. Lambert had gotten to her feet and was walking back toward her house. He saw blood on her left sleeve and offered to help her. According to Mr. Rayner, he offered to call an ambulance, but Mrs. Lambert refused. He instructed one of the boys to retrieve alcohol and a towel from Mrs. Lambert's home; he said that he poured alcohol on her damaged skin and wrapped her arm in the towel. At that point, Mrs. Lambert's daughter, Jessica Sharbino, came to her house. According to Mr. Rayner, Mrs. Sharbino asked her mother, "Mama, what did you do?" Mrs. Sharbino then called for an ambulance.
Damon Ilses testified that he was one of the two boys helping Mrs. Lambert with her yard work. He said he did not see her get hit because he was turned in the opposite direction mowing grass. He saw Mr. Rayner helping Mrs. Lambert get up and saw the blood on Mrs. Lambert's sleeve. Ilses said that Mrs. Lambert was about two feet into the travel lane of Crepe Myrtle as she was trying to get up. He observed Mr. Rayner's car stopped partially in the oncoming lane at an angle to the street. According to Ilses, Mr. Rayner wanted to call an ambulance, but Mrs. Lambert would not let him. Ilses said he then ran next door to inform Mrs. Sharbino of the accident.
Jessica Sharbino testified that her mother has Alzheimer's disease, high blood pressure, and senile dementia. Mrs. Lambert has limited hearing and does not see well, either. She said that caring for her mother is like caring for a child. Mrs. Lambert lived independently before the accident and was able to cook, clean house, and take care of herself. Since the accident, Mrs. Lambert has lived with Mrs. Sharbino. When Ilses told her of the accident, she ran to her mother's house and called "911." Mrs. Sharbino said that she did not talk to Mr. Rayner at the time. According to Mrs. Sharbino, she observed skid marks at the accident scene which began at the middle of the Crepe Myrtle Street/Lambert Street T-intersection and extended seventy-five feet.
Officer Kenneth Secoy of the Pineville Police Department testified that the accident occurred about 100 feet west of the T-intersection. Officer Secoy stated that the weather that day was clear with good visibility. He spoke with Mr. Rayner, who told him that he had seen Mrs. Lambert as he approached her. He said he looked for skid marks but did not find any.

LAW AND OPINION
The trial court's determination of fault in this case is a factual finding which is subject to the manifest error/clearly wrong standard of appellate review. Under this standard, we are required to examine the record in its entirety to determine whether the trier of facts' findings are reasonable, in light of the record reviewed as a whole, and are not clearly wrong. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La. 2/20/95); 650 So.2d 742. While we are bound to accord deference to the fact finder, especially on findings based on credibility determinations, we have a constitutional duty to review facts and determine if the findings are clearly wrong based on the evidence. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099 (La. 7/5/94); 639 So.2d 216.
The duty-risk analysis, which was employed by the trial court to find Mr. Rayner at fault, provides an analytical framework for determining fault in a negligence case. It provides for the consideration of the following four questions:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk and harm caused within the scope of protection afforded by the duty breached?
Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 292 (La.1993), citing Mart v. Hill, 505 So.2d 1120 (La.1987).
The trial court answered the above four questions affirmatively. Upon reviewing the record, we find that, for the following reasons, the trial court's conclusion that Mr. Rayner breached a duty owed to Mrs. Lambert is not reasonable and is clearly wrong under the circumstances.

*77 Cause-in-fact

This is generally a "but for" inquiry. If defendant's actions contributed to plaintiff's injuries, a factual causal relationship is established. Faucheaux, 615 So.2d 289. In this case, it is clear that Mrs. Lambert probably would not have suffered her injuries but for Mr. Rayner's conduct.

Duty
Duty is a question of law. In Uriegas v. Gainsco, 94-1400, pp. 15-18 (La.App. 3 Cir. 9/13/95); 663 So.2d 162, 171-72, writ denied, 95-2485 (La. 12/15/95); 664 So.2d 458, this court comprehensively set forth the correlative duties of motorist and pedestrian as follows:
Louisiana law does not impose absolute or strict liability upon a motorist involved in a collision with a pedestrian. Aetna Cas. & Sur. Co. v. Nero, 425 So.2d 730 (La.1983). Motorists are not the insurers of pedestrians' safety. Puearry v. Department of Pub. Safety, 496 So.2d 1372 (La. App. 3 Cir.1986). However, a motorist is statutorily obligated to exercise due care to avoid colliding with any pedestrian upon the roadway and must give warning to the pedestrian by sounding the horn when necessary. Furthermore, a motorist must exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway. La.R.S. 32:214.
The fact that an accident occurs does not create a presumption of negligence in favor of either the pedestrian or motorist. Accidents occurring between a pedestrian and a motorist are governed by the principles of comparative fault. La.Civ.Code art. 2323; Turner v. New Orleans Pub. Serv. Inc., 476 So.2d 800, 803 (La.1985). Therefore, a determination of negligence in motorist/pedestrian accidents rests upon the particular facts and circumstances of each case. See Myles v. Turner, 24,198 (La. App. 2 Cir. 1/19/94); 632 So.2d 384.
The driver of a vehicle bears a greater responsibility to avoid pedestrian/motorist accidents because the consequences of his fault present the potential for causing the greater havoc. Turner, supra. "The greater the risk of harm to others, the greater is the fault." Id. at 805. As stated by the Louisiana Supreme Court in Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400, 406 (La.1978):
The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety.... It must be noted, however, that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.
Likewise, a pedestrian is charged with a duty to exercise reasonable care when entering the roadway or a crosswalk. Miller v. Bailey, 621 So.2d 1174 (La.App. 3 Cir.), writ denied, 629 So.2d 358 (La.1993). A pedestrian simply may not freely choose to leave a position of safety and pursue a course certain to enter the path of a vehicle which is so close that it is impossible for the driver to yield. La.R.S. 32:212(B). Furthermore, when a pedestrian crosses a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection, the pedestrian must yield the right of way to all vehicles upon the roadway. La.R.S. 32:213(A). Therefore, responsibility for travel free from undue peril on the streets and highways of this state is shared by both the motorist and pedestrian. The countervailing duties that motorists and pedestrians owe to each other ensure that both pedestrians and motorists may safely coexist on roadways traversed by both.
Although a motorist commands a greater instrumentality of harm, a pedestrian still bears the burden of proving that the motorist was negligent before he can recover damages. Puearry, 496 So.2d at 1374; Bennett v. State, Through DOTD, 503 So.2d 1022 (La.App. 2 Cir.), writ denied, 505 So.2d 58 (La.1987); McKenzie v. NOPSI, 455 So.2d 678 (La.App. 4th Cir.), writ denied, 460 So.2d 1043 (La.1984). A motorist has no special duty to anticipate *78 the presence of a pedestrian in a roadway where there is no crosswalk. Shroyer v. Grush, 555 So.2d 534 (La.App. 4 Cir.1989); writs denied, 559 So.2d 139, 140 (La.1990); Osby v. Harris, 375 So.2d 181 (La.App. 2 Cir.1979). Moreover, a motorist is not held to the highest standard of care in guarding against unexpected or unusual obstructions in the road. Calais v. Thibodeaux, 220 So.2d 209 (La.App. 3 Cir.), writ denied, 254 La. 15, 222 So.2d 67 (1969). A motorist has a right to assume that a pedestrian will remain in a position of safety and will not attempt to enter the path of a moving vehicle. Puearry, 496 So.2d at 1374. However, a motorist may not blindly rely upon this assumption when he sees, should have seen, or anticipates that the pedestrian is going to cross the path of his vehicle. Henry v. Svebek, 339 So.2d 895 (La.App. 3 Cir.1976), writ refused, 341 So.2d 1127 (La.1977). When a motorist sees, should have seen, or anticipates that the pedestrian is going to cross the path of his vehicle, the motorist must exercise reasonable care to protect the pedestrian. Baumgartner, 356 So.2d at 407.
Therefore, it is clear that under La. R.S. 32:214, Mr. Rayner had a duty to exercise "due care" to avoid the collision and to exercise "proper precaution" upon observing an incapacitated person on the highway.

Breach of Duty
The issue of whether a duty has been breached is a fact-intensive inquiry. This case presents the questions: "Where was the pedestrian or incapacitated person, in what position or posture, and at what distance from the vehicle when the motorist allegedly could have or should have, seen him and became obligated to exercise either `due care to avoid' him as a pedestrian or `proper precaution upon observing him' as an incapacitated person?" Myles v. Turner, 24,198 (La.App. 2 Cir. 1/19/94); 632 So.2d 384, 390.
In the present case, upon observing Mrs. Lambert, Mr. Rayner assumed the duty to exercise reasonable care to protect her. Mr. Rayner slowed his car and moved over toward the left. During the time it took for the automobile to travel the subsequent 200 feet, Mrs. Lambert continued to walk alongside Crepe Myrtle Street and gave no reasonable indication that she intended to cross the street. When Mr. Rayner got within seven or eight feet of her, Mrs. Lambert then turned into his path. Mr. Rayner reacted reasonably by swerving to the left and hitting his brakes. His efforts to avoid the collision, although reasonable, were nevertheless not successful.
Mr. Rayner, who did not know Mrs. Lambert, was given no reasonable indication by any of her actions that she was in some way incapacitated. He found it "odd" or "funny" that she was carrying clippings along the roadside; however, this impression provided him with no notice that Mrs. Lambert was incapacitated by senile dementia.
The record indicates that Mr. Rayner exercised reasonable care under the circumstances to protect Mrs. Lambert from the risk of collision. He slowed down, moved his car to the left, and, when she stepped into the path of his car, he swerved the car sharply to the left and hit his brakes. Sounding his horn would have been a futile act which would not have resulted in an avoidance of the collision. Despite Mr. Rayner's efforts, his car's side rear-view mirror, its outermost right-side appendage, struck Mrs. Lambert and knocked her to the ground.
The record also establishes that Mrs. Lambert left an area of safety and encroached into the path of Mr. Rayner's car, which, at the moment she did so, was extremely close to her person. Before deciding whether Mr. Rayner was at fault, the trial court concluded that, because of her disability resulting from the effects of age, Mrs. Lambert's duty of care as a pedestrian was diminished. Relying on LaCava v. City of New Orleans, 159 So.2d 362 (La.App. 4 Cir. 1964) and Fields v. Senior Citizens Center, Inc., 528 So.2d 573 (La.App. 2 Cir.1988), the trial court concluded that Mrs. Lambert was not contributorily (or comparatively) negligent because she acted as a reasonably prudent person with senile dementia. The trial court erred in determining whether Mrs. Lambert was contributorily negligent before *79 first considering the purported negligence or fault of Mr. Rayner.
The trial court's conclusion that Mr. Rayner breached his duty owed to Mrs. Lambert is not supported by the record. Mr. Rayner acted reasonably, and nothing in the record suggests that he was negligent under the circumstances. The trial court's conclusion is therefore clearly wrong. If we were to hold otherwise, as the trial court did, Mr. Rayner would thereby be elevated to the status of the insurer of Mrs. Lambert's safety. The law does not require such a result.

DECREE
For these reasons, we reverse the judgment of the trial court and dismiss plaintiff's action. All costs of these proceedings, at the trial and appellate level, are assessed to plaintiff, Jessica L. Sharbino, as curatrix for Lillie Lambert.
REVERSED AND RENDERED.
SAUNDERS, J., dissents and assigns reasons.
COOKS, J., dissents.
SAUNDERS, Judge, dissenting.
In my view, there is no manifest error in the factual determination that Mr. Rayner was at fault in causing this accident. La.R.S. 32:214 states that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing ... any confused or incapacitated person upon a highway.
In my view, the record supports the trial court's finding that Mr. Rayner and his insurer are liable, for Mr. Rayner conceded that he was alerted to danger as he approached the intersection of Lambert and Crepe Myrtle Street, yet he failed to stop. Further, Mr. Rayner testified that he neither changed lanes nor reduced speed to the point where he could safely stop in time. Finally, Mr. Rayner conceded that if he had blown his horn, a requirement of La.R.S. 32:214, he would have made his presence known to Mrs. Lambert. Given these admissions, I can find no error in the trial court's determination of liability on the part of Mr. Rayner.
I respectfully dissent.