736 So.2d 987 (1999)
Tracy Vinnette JACKSON, et al., Plaintiffs-Appellants,
v.
SCOTT TRUCK AND TRACTOR, INC., et al., Defendants-Appellees.
No. 31,933-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*989 Wright & Underwood by Bobby N. Underwood, Monroe, Counsel for Appellants.
Crawford & Anzelmo by Brian E. Crawford, K. Douglas Wheeler, Monroe, Counsel for Appellees.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, Judge
The plaintiff, Tracy Vinnette Jackson, individually and on behalf of her minor daughter, Gabrielle Alicia Jackson, appeals a jury verdict finding that John K. Pittman, the driver of a truck belonging to Scott Truck and Tractor Company, was not liable in the death of Charles Jackson, Jr. For the following reasons, we affirm.

FACTS
On October 12, 1995, at approximately 7:00 p.m., Charles Jackson, Jr. was riding his bicycle east on Ticheli Road, in Monroe. He was severely vision-impaired, having only 20/200 vision, which could not be corrected. He was wearing khaki pants and a dark-colored jacket. It was dark when Mr. Jackson approached the intersection of Ticheli Road and Highway 165. The intersection was poorly illuminated. It appears that Mr. Jackson had a red light, but rode his bicycle into the intersection, against the light.
A Ford Bronco, driven by Leroy Profit, was northbound on Highway 165 and swerved in an attempt to avoid Mr. Jackson. Mr. Jackson and his bicycle collided with the side of Mr. Profit's Bronco. Mr. Profit brought his vehicle to a stop off the roadway. He and his passenger, Michael Pleasant, then ran back to the intersection to assist Mr. Jackson. A red Isuzu truck occupied by three men was northbound on Highway 165. They saw the accident and stopped to render assistance.
Ms. Alberta Brown and her daughter, Alberta Brown III, were westbound on Ticheli Road, saw the accident and stopped to render assistance. The senior Ms. Brown stationed herself on the side of the roadway to warn oncoming traffic.
A Ford F-350 one-ton truck, with dual rear wheels, owned by Scott Truck and Tractor and driven by John K. Pittman, approached the intersection, traveling north on Highway 165. Ms. Brown waved her arms to warn Mr. Pittman, but he proceeded into the intersection traveling *990 at 55-60 m.p.h. The posted speed limit was 55 m.p.h. Mr. Pittman swerved over to the left lane and struck Mr. Jackson, inflicting injuries to his chest and head which were instantly fatal.
On March 7, 1996, Mr. Jackson's widow filed suit on behalf of herself and the couple's minor daughter, Gabrielle, for damages arising from the death of Mr. Jackson. Named as defendants were Scott Truck and Tractor Company, John K. Pittman, their insurer, Audubon Indemnity Insurance Company, and Leroy Profit and his insurer, Allstate Insurance Company. All defendants requested a trial by jury. The plaintiff settled with Mr. Profit and his insurer prior to trial. The matter was tried on February 2-5, 1998.
Numerous eyewitnesses and expert witnesses testified at trial and presented conflicting views and interpretations of this accident. Some witnesses maintained that Mr. Jackson was first run over by the Bronco. Others stated that Mr. Jackson was not seriously injured by the impact with the Bronco and was attempting to rise from the roadway when he was struck and killed by Mr. Pittman. Several expert witnesses concluded that the decedent was killed when he was struck by Mr. Pittman's vehicle. One expert concluded that the vehicle driven by Mr. Pittman did not inflict the fatal injuries to Mr. Jackson. Some experts concluded that due to the poor lighting conditions and the distraction at the intersection, the accident was unavoidable. Other experts found that, even though Mr. Pittman did not have enough time to stop his vehicle after observing Mr. Jackson, he did have enough time to swerve to avoid hitting him.
At the close of the proceedings, the jury determined that Mr. Pittman was not guilty of negligence or fault that was a proximate cause of the death of Mr. Jackson. The plaintiff appealed the verdict.

FAULT OR NEGLIGENCE OF MR. PITTMAN
The plaintiff contends that the jury erred in finding that Mr. Pittman was without fault in the death of Mr. Jackson. The plaintiff argues that the decedent was wearing light-colored pants and persons standing on the road were waving their arms in an attempt to warn oncoming traffic of the presence of Mr. Jackson in the roadway. According to the plaintiff, if Mr. Pittman had been attentive and driving within the range of his headlights, and had not changed lanes toward Mr. Jackson, his vehicle would not have struck and killed the decedent. The plaintiff contends that Mr. Pittman breached his duty to see and avoid Mr. Jackson, who was dazed or incapacitated in the roadway.
The plaintiff argues that at the time Mr. Pittman drove through the intersection, Mr. Jackson was technically a pedestrian. The plaintiff asserts that Mr. Pittman had a duty to keep a sharp lookout and to discover the presence of those who might be in danger. He also had a duty to maintain reasonable control of his vehicle and to have headlights that allowed him to see at least 500 feet on high beam and 150 feet on low beam. The plaintiff also pointed out that a motorist is legally held to be aware that he will meet many emergencies in which pedestrians will be found in perilous situations. According to the plaintiff, Mr. Pittman had a duty to see and avoid. The plaintiff contends that Mr. Pittman breached his duty. The plaintiff points to testimony showing that Mr. Pittman should have seen Mr. Jackson and the others in the intersection from at least 300-400 feet and should have been able to move over, rather than striking the decedent.
According to the plaintiff, the record shows that Mr. Pittman's actions were the cause of Mr. Jackson's death. The evidence demonstrates that the tire print on the decedent's body matched the tread on Mr. Pittman's tires, but not those of Mr. Profit. There was blood on Mr. Pittman's vehicle and not on Mr. Profit's.

Standard of Review
The Louisiana Supreme Court has developed a two-part test for reversing *991 a fact finder's determination. The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact, and then the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120 (La.1987); Morehead v. Ford Motor Company, 29,399 (La.App.2d Cir.5/21/97), 694 So.2d 650, writ denied 97-1865 (La.11/7/97), 703 So.2d 1265. Said another way, findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Daye v. General Motors Corporation, 97-1653, (La.9/9/98), 720 So.2d 654; Maranto v. Goodyear Tire & Rubber Company, 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757; Rosell v. ESCO, 549 So.2d 840 (La.1989); Brister v. Continental Insurance Company, 30,429 (La.App.2d Cir.4/8/98), 712 So.2d 177.
The duty of the fact finder is to evaluate credibility when testimony is conflicting and to accept or reject any part of a witness' testimony. Credibility determinations, including the evaluation of expert testimony, together with the ultimate issue of whether a plaintiff has satisfied his burden of proof, are factual issues to be resolved by the trier of fact. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993); Ferrell v. Minden Family Care Center, 30,088 (La.App.2d Cir.12/19/97), 704 So.2d 969, writ denied 98-0392 (La.3/27/98), 716 So.2d 891. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court may feel that its own evaluations and inferences are more reasonable than those of the jury. Brister v. Continental Insurance Company, supra; Morehead v. Ford Motor Company, supra.
La. C.C. art. 2315 provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. To prevail on a negligence claim under La. C.C. art. 2315, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-infact of the plaintiff's injuries (the cause-infact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318. A negative answer to any of the above inquiries will result in the determination of no liability. Gray v. Economy Fire & Casualty Insurance Company, 96-667 (La.App. 3d Cir.11/6/96), 682 So.2d 966.

Duties of Motorists and Pedestrians
The duty owed by a motorist to either a pedestrian or an incapacitated person on a roadway is generally stated in La. R.S. 32:214, which provides:
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
A driver is required to maintain reasonable control of the vehicle he is operating and to have lights that afford him visibility during the nighttime of persons and vehicles at least a distance of 500 feet ahead at high beam and of 150 feet ahead at low beam. La. R.S. 32:321; La.R.S. 32:58; Finley v. North Assurance Company of America, 476 So.2d 837, (La.App. 2d Cir. 1985).
*992 Drivers are required to exercise due care to avoid colliding with any pedestrian in the road. Specifically, motorists are charged with the duty to see what an ordinary prudent driver should have seen under the circumstances, and to avoid striking pedestrians in the road ahead. Bell v. USAA Casualty Insurance Company, 30,172 (La.App.2d Cir.1/21/98), 707 So.2d 102, writs denied 98-0712 (La.5/8/98), 718 So.2d 433 and 98-0766 (La.5/8/98), 718 So.2d 434.
A motorist is legally held to be aware that he will face emergencies in which pedestrians will be found in perilous situations, even in the nighttime on rural highways. The primary duty of a motorist is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Tennis v. Hartford Insurance Company, 523 So.2d 278 (La.App. 2d Cir. 1988). Drivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Thissel v. Commercial Union Insurance Company, 476 So.2d 851 (La.App. 2d Cir. 1985), writs denied 479 So.2d 361 (La.1985) and 479 So.2d 366 (La.1985).
Even though a motorist may assume that the road ahead is safe for travel, he must, when traveling after darkness or in circumstances of limited or impaired visibility, observe and so control his vehicle as to avoid discernable objects in his path of travel; that is, in adverse conditions, a greater degree of care must be exercised. This rule is subject to the well-established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which under the circumstances are difficult to discover. Corkern v. McWilliams, 228 So.2d 236 (La. App. 1st Cir.1969); Uriegas v. Gainsco, 94-1400 (La.App.3d. Cir.9/13/95), 663 So.2d 162, writ denied 95-2485 (La.12/15/95), 664 So.2d 458.
Under the sudden emergency doctrine, one who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. Traweek v. Jackson, 30,248 (La.App. 2d Cir.2/25/98), 709 So.2d 867.
Louisiana law does not impose absolute or strict liability upon a motorist involved in a collision with a pedestrian. Motorists are not the insurers of pedestrians' safety. Sharbino v. State Farm Mutual Automobile Insurance Company, 96-566 (La.App. 3d Cir.1/8/97), 690 So.2d 73. The fact that an accident occurs does not create a presumption of negligence in favor of either the pedestrian or motorist. Accidents occurring between a pedestrian and a motorist are governed by the principles of comparative fault. Therefore, a determination of negligence in motorist/pedestrian accidents rests upon the particular facts and circumstances of each case. Uriegas v. Gainsco, supra.

Discussion
The plaintiff argues that the jury was manifestly erroneous or clearly wrong in finding that Mr. Pittman was not negligent or at fault in striking and killing Mr. Jackson as he lay in the roadway. After examining the evidence and the testimony submitted in this case, we find that this argument is without merit.
Mr. Profit, the driver of the Ford Bronco, testified as to the events occurring on the evening of October 12, 1995. He stated that, as he traveled north on Highway 165, he had the green light. He then caught a glimpse of something coming across the intersection of Highway 165 with Ticheli Road. He testified that he swerved in an attempt to avoid the object. He heard something scratch the side of his vehicle. He then stopped his vehicle on *993 the side of the road and ran back to the intersection. There he saw Mr. Jackson and his bicycle, down in the roadway. According to Mr. Profit, Mr. Jackson was alive at that point and down on one knee and his hands, moving around. Mr. Profit testified that he saw Mr. Pittman's truck coming and tried to flag it down, but had to jump out of the way when the vehicle failed to stop. Mr. Pittman's vehicle swerved to the left, toward Mr. Jackson. According to Mr. Profit, one of Mr. Pittman's front tires hit Mr. Jackson, but he was not sure if any of the back tires hit him.
John K. Pittman testified that on the evening in question, he was driving north on Highway 165, in the right lane. It was approximately 7:00 p.m. and he had completed his work day. He stated that he had not been drinking, was not overly fatigued and was not in a hurry. The speed limit was 55 m.p.h. The intersection of Highway 165 was dark and Mr. Pittman had his headlights on low beam because there was other traffic in the area. He testified that, as he got very close to the intersection of Highway 165 and Ticheli Road, he saw a lady standing on the right side of the road, close to the intersection, waving her arms. He was distracted by her action and when he looked back to the intersection, as he entered it, he became aware that there was something in the road. He stated that he swerved to the left in an attempt to avoid the object. He knew that he had hit something and drove his truck into the median and stopped.
A red Isuzu truck, driven by Kevin B. King, was following Mr. Profit's Bronco, northbound on Highway 165. Passengers in the vehicle were Michael William Jones and Rickie Croom. Mr. King testified that he saw the bicycle pull out into the intersection. He stated that a white car swerved to avoid the bicycle and kept going. It did not strike Mr. Jackson. Then the Bronco, driven by Mr. Profit, collided with the bicycle. He testified that the Bronco hit the bicycle on the front left wheel. According to Mr. King, the Bronco ran over Mr. Jackson. Mr. King testified that he pulled over and called 911 on his cellular phone. He stated that he did not see Mr. Pittman's truck come through the intersection. He testified that Mr. Pittman then pulled up close to him and stated that he (Pittman) hit something.
Michael Jones testified that he was a passenger in Mr. King's vehicle and that he and Rickie Croom were drinking beer at the time of the accident, but that Mr. King, the driver, was not drinking. Mr. Jones testified that he saw a white Pontiac Sunbird swerve to avoid Mr. Jackson as he rode his bicycle into the intersection. The white car kept going. He then testified that Mr. Jackson was struck by Mr. Profit's Bronco. He testified that he thought the bike hit the front of the Bronco, but he did not see the Bronco run over Mr. Jackson. He also stated that he didn't see Mr. Pittman's vehicle hit Mr. Jackson.
Rickie Croom testified that he saw a white car swerve to avoid Mr. Jackson on the bicycle. The bicycle then hit the Bronco broadside and flipped Mr. Jackson up over the hood. He then hit the windshield, by the driver's door, and was thrown under the Bronco. He stated that he did not see Mr. Jackson moving after the initial impact with Mr. Profit's vehicle. He also testified that he did not see Mr. Pittman come through the intersection. However, he did not think that Mr. Pittman's truck hit Mr. Jackson. He opined that due to the size of the tires on Mr. Pittman's truck, they would have torn the victim apart if that truck had run over him.
Ms. Alberta Brown and her daughter, Alberta Brown III, were west bound on Ticheli Road. The senior Ms. Brown testified that she did not think it was dark at the time Mr. Jackson rode his bicycle into the intersection. She stated that she thought Mr. Profit, in the Bronco, tried to avoid impact with the bicycle and the Bronco ran off onto the side of the road. She testified that Mr. Jackson was trying to get up after the accident with Mr. Profit's *994 Bronco. She also stated that she tried to warn Mr. Pittman as he approached the intersection.
Alberta Brown III testified that it was dark at the time Mr. Jackson rode his bicycle into the intersection, but it was not so dark that she could not see him. She testified that the bicycle tire hit the rear tire on Mr. Profit's Bronco. She stated that Mr. Jackson flew up into the air and then landed on his back. She testified that she saw Mr. Jackson trying to move after the impact with the Bronco. Ms. Brown III testified that Mr. Pittman's vehicle made no attempt to stop as it neared and entered the intersection.
Steve Droesser, the service manager for Scott Truck and Tractor, testified that he was familiar with the truck driven by Mr. Pittman, which was involved in this accident. He stated that it was a one-ton Ford truck, loaded with several hundred pounds of equipment. Mr. Droesser was traveling approximately ten minutes behind Mr. Pittman. After the accident, Mr. Pittman contacted Mr. Droesser on a twoway radio and asked him to stop. After the accident, the truck was kept out of service. Mr. Droesser identified photographs of the tires on the truck and noted that they were Goodyear Workhorse tires, each measuring seven inches in width. Mr. Droesser also testified that the lights on the truck were tested. The truck was taken out to a dark road and a person, dressed in Mr. Jackson's clothing, lay down in the road. Mr. Droesser stated that from about 600 feet away, he could tell there was something in the road.
Keith Phenix, of the Louisiana State Police, investigated the accident. He testified that he arrived at the scene at about 7:20 p.m. and it was dark. The intersection was not well lit. Trooper Phenix stated that he found no blood, tissue, or clothing on the Bronco but there were scratches from the bicycle all the way down the side of the vehicle. However, there was blood on the truck driven by Mr. Pittman and that truck had mud grip tires that matched a treadmark on the victim's body. According to Trooper Phenix, because of the darkness of the intersection and the distraction caused by Ms. Brown, waving her arms on the roadside, the accident was unavoidable for Mr. Pittman. None of those involved in the accident were under the influence of drugs or alcohol. No citations were issued to any of the parties involved in this accident.
Dr. Steven Timothy Hayne performed the autopsy on Mr. Jackson at the request of the Ouachita Parish coroner, Dr. Claude Smith. He testified that the victim died of extensive head and chest injuries that were instantly fatal. He noted there was a tire imprint on the victim's chest which was seven inches wide. It was established that the tires on the vehicle driven by Mr. Pittman matched the imprint on the victim's body. Dr. Hayne concluded that Mr. Jackson was killed by Mr. Pittman's truck and not by the Bronco. While he felt that Mr. Jackson's head injuries were caused by the impact with the fender of Mr. Pittman's truck, as Mr. Jackson attempted to rise from the roadway, he could not rule out the possibility that the injuries were caused by being run over by a truck tire. Dr. Hayne stated that there was no specific pattern to the victim's head injuries which could be attributed to a portion of a vehicle such as a bumper or a tire.
A report by Wendell D. Kegg, a tire expert, was filed into evidence. According to Mr. Kegg, most probably Mr. Jackson was struck by the right front corner of Mr. Pittman's truck. However, Mr. Kegg did not feel that there was sufficient evidence to demonstrate that the right rear dual tires of the truck rolled over Mr. Jackson, leaving a single tread imprint across his torso. He therefore concluded that the vehicle driven by Mr. Pittman did not cause the demise of Mr. Jackson.
Andrew Jefferson McPhate, an expert mechanical engineer, testified that he conducted an experiment on a dark roadway *995 and it was possible to see Mr. Jackson's pants from 300-400 feet away. He testified that Mr. Pittman saw Mr. Jackson in the intersection from 100 feet away. At that point, he was not able to stop the truck. However, according to Mr. McPhate, Mr. Pittman should have been able to move over and avoid hitting Mr. Jackson. Mr. McPhate testified that Mr. Pittman's attention should have been directed to Mr. Jackson and the others standing in the roadway close to him. However, he acknowledged that Ms. Brown may have distracted Mr. Pittman. The witness testified that blood was found on the front wheel and the rear fender of Mr. Pittman's vehicle. He stated that it is possible that only one of the four back tires on Mr. Pittman's truck ran over the victim and that would account for the single tire mark on the body. He also stated that the tire marks were consistent with Mr. Pittman's truck, but not with Mr. Profit's Bronco. Therefore, this expert discounted any conflicting testimony that the victim was first run over by the Bronco.
Charles Victor Zeeger, an expert in civil engineering, with respect to pedestrian and bicycle highway safety and visibility, testified that he investigated the circumstances of this accident and determined that Mr. Pittman had virtually no chance to avoid the collision on the night of the accident. He stated that there was nothing to show that Mr. Pittman was inattentive or unsafe. Also, there was no showing that he lost control of his vehicle in any way. Mr. Zeeger discussed the findings of a study conducted at night with a pedestrian standing upright, wearing a white shirt. The study concluded that, under those circumstances, it took approximately 224 feet to detect an object in the road and 105 feet to recognize that the object was a pedestrian. When the pedestrian was wearing dark clothing, the detection and recognition distances were significantly reduced. Mr. Zeeger testified that, in this case, with Mr. Pittman traveling at 60 m.p.h., it would take 132 feet before he could have seen and reacted to an object in the road. It would then have taken approximately 200 feet to stop the truck. Due to the poor lighting conditions at this intersection, Mr. Pittman could not have seen Mr. Jackson in the road from 330 feet away. Mr. Zeeger concluded that under the circumstances presented to Mr. Pittman on that night, he used due caution and exercised reasonable conduct as a motorist.
The facts of the present case are similar to those of Rosen v. Lloveras, 148 So. 734 (La.App.Orleans 1933). In Rosen, a pedestrian was struck by a truck in the early morning hours on a dark, rainy street in New Orleans. The pedestrian was knocked to the pavement. The truck stopped and several of its occupants began waving their arms to warn oncoming traffic that the pedestrian was down in the roadway. An approaching motorist was distracted and alarmed by this behavior, did not stop, and ran over the pedestrian. The pedestrian was killed and his family filed a wrongful death suit. The pedestrian's family settled with the truck driver and the matter proceeded to trial against the driver of the automobile. The trial and appellate courts found that the driver of the automobile was not at fault. In Rosen, the court found that the pedestrian most likely suffered serious injury from the initial impact with the truck. However, the possibility that the pedestrian may have suffered fatal injuries by being run over by the automobile could not be excluded. The automobile driver's actions were excused under the sudden emergency doctrine. To support its opinion that the driver was not negligent, the appellate court considered that the pedestrian was in a position where the driver would not anticipate his presence, that the conditions, dark and rainy, obscured the driver's view, and that the driver was distracted by people running and waving.
In the present case, the jury was faced with widely conflicting testimony. Nevertheless, *996 there was a reasonable factual basis for the jury to conclude that Mr. Jackson was killed by Mr. Pittman's truck and not Mr. Profit's Bronco. There was also a reasonable factual basis for the jury to conclude that Mr. Pittman was not negligent or at fault in causing the accident and that he did not breach any duty owed to Mr. Jackson. Photographs in the record and testimony presented at trial show that this accident occurred at night at a very dark intersection. Further, while Mr. Jackson was wearing light-colored pants, he was wearing a dark jacket and was lying in the roadway when struck by Mr. Pittman's vehicle. Also, there is evidence upon which the jury could reasonably conclude that Ms. Brown, while attempting to prevent this accident, actually distracted Mr. Pittman's attention from the intersection, further hindering him from seeing Mr. Jackson in the roadway. It was established that Mr. Pittman was traveling at or near the speed limit and had his lights on low beam, which, by statute, would have allowed him to see ahead approximately 150 feet. Both Mr. McPhate and Mr. Zeeger, the expert witnesses in this case, agreed that Mr. Pittman simply could not have seen Mr. Jackson in time to stop. Even though Mr. McPhate thought Mr. Pittman should have had enough time to swerve and avoid Mr. Jackson, he stated that Mr. Pittman would not have had much time to complete this maneuver. He also conceded that Ms. Brown may have distracted Mr. Pittman.
These factors provide a reasonable factual basis for the jury to conclude that Mr. Pittman was not negligent or at fault in causing this accident. Rather, there was a reasonable factual basis for the jury to conclude, as they must have, that Mr. Pittman was presented with circumstances making this accident unavoidable.
Based upon the record before us, we find that the jury in the present case was not manifestly erroneous or clearly wrong in rejecting the plaintiff's claims against the defendants. There was a reasonable factual basis upon which the jury could conclude that Mr. Pittman was not negligent or at fault in causing this unfortunate and tragic accident. Because we find that the jury did not err in finding that Mr. Pittman was free from fault in this accident, we do not reach the plaintiff's additional arguments that there should be an apportionment of fault and that she and her daughter should be awarded damages for the death of Charles Jackson, Jr.

CONCLUSION
For the reasons stated above, we find that the jury verdict in this case, holding that the defendant, John K. Pittman, was not at fault in causing the accident which resulted in the death of Charles Jackson, Jr., was not manifestly erroneous or clearly wrong. Accordingly, we affirm the jury verdict, dismissing the claims of the plaintiff, Tracy Vinnette Jackson, individually and as tutrix for her minor child, Gabrielle Alicia Jackson.
AFFIRMED.