STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KIM DOUCET, ET UX.

VERSUS

KEITH ALLEMAN, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20111110
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

Carol S. Hunter
Assistant Attorney General
556 Jefferson St., 4th Floor
Lafayette, LA 70501
(337) 262-1700
COUNSEL FOR DEFENDANT/APPELLEE:
 Louisiana Department of Transportation & Development


Frank X. Neuner, Jr.
Jennie P. Pellegrin
NeunerPate
P.O. Box 52828
Lafayette, LA 70505-2828
(337) 237-7000
COUNSEL FOR DEFENDANT/APPELLEE:
 Louisiana Department of Public Safety & Corrections
 (Probation & Parole)

Andrew Blanchfield
Keogh, Cox & Wilson, Ltd.
P. O. Box 1151
Baton Rouge, LA 70821
(225) 383-3796
COUNSEL FOR DEFENDANTS/APPELLEES:
    Continental Casualty Company
    Harley-Davidson Motor Company, Inc.

Ian A. Macdonald
Jones Walker
P. O. Box 3408
Lafayette, LA 70502-3408
(337) 593-7600
COUNSEL FOR DEFENDANTS/APPELLEES:
    Progressive Security Insurance Company
    Keith Alleman

Franklin J. Foil
Foil Law Firm
P. O. Box 4288
Baton Rouge, LA 70821-4288
(225) 382-3264
COUNSEL FOR DEFENDANT/APPELLEE:
    Jerry Jones

Mark R. Pharr, III
Lindsay L. Meador
Galloway, Johnson, Tompkins, Burr & Smith, PLC
328 Settlers Trace Blvd.
Lafayette, LA 70508
(337) 735-1760
COUNSEL FOR DEFENDANT/APPELLEE:
    Barrett Moving and Storage Company

Michael J. Remondet, Jr.
Juliette B. Wade
Jeansonne & Remondet
P.O. Box 91530
Lafayette, LA 70509
(337) 237-4370
COUNSEL FOR DEFENDANTS/APPELLEES:
    National Casualty Company
    Cajun Cycles, Inc. d/b/a Cajun Harley Davidson

**Scott A. Dartez**
**Warren A. Perrin**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**251 La Rue France**
**Lafayette, LA 70508**
**(337) 237-8500**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Gaston Doucet**
    **Kim Doucet**

**Samuel B. Gabb**
**Joseph R. Pousson, Jr.**
**Plauche, Smith & Nieset**
**P.O. Drawer 1705**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Secon, Inc.**

**Gerard J. Dragna**
**Eric Winder Sella**
**Perrier & Lacoste, LLC**
**365 Canal Street, Suite 2550**
**New Orleans, LA 70130**
**(504) 212-8820**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Suddath Relocation Systems of Minnesota, LLC**

**Gregory A. Koury**
**Andrew P. Hill**
**Koury & Hill, LLC**
**P. O. Box 52025**
**Lafayette, LA 70505-2025**
**(337) 993-1842**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Kim Doucet**
    **Gaston Doucet**

**Chaz H. Roberts**
**Bradley Aldrich**
**Attorney at Law**
**P. O. Box 53936**
**Lafayette, LA 70505**
**(337) 504-3202**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Kim Doucet**
    **Gaston Doucet**

**GREMILLION, Judge.**

The widow and son of Ralph John Doucet appeal the trial court's grant of summary judgment in favor of Jerry Jones (Jones). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2010, Doucet was participating in a motorcycle demonstration ride sponsored by the Harley-Davidson Motorcycle Company and hosted by a local dealer, Cajun Harley. The test drive began at the Cajun Harley showroom in Scott, Louisiana and proceeded for about eleven miles. Jones coordinated the event that involved ten to twelve motorcycle riders who were allowed to ride motorcycles as a means of test-driving them. Doucet was tragically killed when Keith Alleman (Alleman), who was traveling southbound on Louisiana Highway 93 to visit his probation officer, veered off the road, overcorrected, and crashed into Doucet as he traveled northbound on Highway 93.[1]

Numerous parties were named as defendants; however, the defendant at issue in this appeal is Jones. Plaintiffs argue that Jones did not take the necessary precautions to ensure the safety of the riders on the promotional ride, primarily arguing that Jones should have chosen a safer route for the demo ride.

Jones filed a motion for summary judgment, which was granted by the trial court in his favor in November 2014. The plaintiffs timely appealed.

The plaintiffs assert as error:

> 1. The Trial Court erred by granting summary judgment in favor of Jones because Jones did not negate any elements of the Doucet Appellants' claims and the record contains sufficient

---

[1] Alleman was serving two years' probation following his guilty plea in 2008 to possession of methamphetamine in violation of La.R.S. 40:967. Following this accident, Alleman was cited for driving while intoxicated in violation of La.R.S. 14:98, vehicular homicide in violation of La.R.S. 14:32.1, and careless operation in violation of La.R.S. 14:98.

evidence to establish a prima facie case of negligence against Jones.

2. The Trial Court erred by granting summary judgment in favor of Jones because Jones owed a duty to take reasonable safety measures to protect Promotion participants.

3. The Trial Court erred by granting summary judgment in favor of Jones because the Collision was foreseeable.

4. The Trial Court erred by granting summary judgment in favor of Jones because Jones breached his duty by failing to take reasonable, necessary safety precautions to protect participants in the Promotion.

5. The Trial Court erred by granting summary judgment in favor of Jones because there are genuine disputes of material fact regarding Alleman's alleged intoxication.

## DISCUSSION

### *Summary Judgment Law*

We use the de novo standard when reviewing a trial court's ruling on summary judgment. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment procedure is favored under Louisiana law. La.Code Civ.P. art. 966(A)(2).

> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted.

*Bufkin v. Felipe's Louisiana,* LLC, 14-0288, p. __ (La. 10/15/14), __ So.3d __, __.

2

The duty-risk analysis applies to all negligence claims brought pursuant to La.Civ.Code art. 2315 to determine if a party is liable to another under the particular facts of the case.

> A plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-0366, pp. 8-9 (La.12/6/11), 79 So.3d 293, 299. The threshold question is "whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Bufkin*, __ So.3d at __.

In his deposition, Alleman stated that because he is a motorcycle enthusiast, he was distracted by the motorcycle procession, which caused him to leave the road. He stated:

> Q. In your opinion, if the motorcycles weren't there would you have gone off the road?
>
> . . . .
>
> A. No, I wouldn't have.
>
> Q. Did the motorcycles distract you?
>
> A. Yes. Just because I'm a motorcyclist and I'm always looking.
>
> . . . .
>
> Q. When you are riding around, do you typically notice other people riding on motorcycles?
>
> A. Yes.
>
> Q. Is that because you are a motorcycle enthusiast?
>
> A. Yes.
>
> . . . .

Q. You stated earlier that this accident occurred because you saw the motorcycles and they distracted you and you left the roadway; is that correct?

A. That's what I said.

Q. What was it about these motorcycles that distracted you such that you would have left the roadway in that curve that you had negotiated prior to this and were familiar with?

A. Nothing in particular. It's just what distracted me that took my eyes off the road for a little while.

Q. In the past before this accident when you had seen other groups of motorcycles traveling on roadways, why didn't they distract you like this group did?

A. Oh, they distracted me. I just didn't leave the roadway.

Q. Is it fair to say that whenever you're driving and see a motorcycle or group of motorcycles your eyes are drawn in that direction because you are a motorcycle enthusiast?

A. Yes.

Q. So it was not necessarily this group of motorcycles in particular, it was just motorcycles that distracted you?

A. Correct.

Alleman further testified that even if the motorcycles had an escort with flashing lights, he still would have been distracted by them because of his interest in motorcycles.

*Jones*

Plaintiffs claim that Jones was negligent in failing to use inexpensive and simple safety measures such as headlight modulators that would have alerted Alleman sooner of the approach of a group of motorcycles, requiring that all riders

wear safety vests, obtaining a police escort, and obtaining a permit.[2] In support of their allegations, plaintiffs submitted the affidavit of Michael J. Matthews, a motorcycle safety consultant.

Jones, as the event coordinator, independently contracted with Barrett Storage & Moving Company to transport the motorcycles used in the demo from Harley-Davidson to Cajun Harley and to ensure that the event was conducted within the parameters of Harley-Davidson's program.

Jones testified regarding the precautions that he undertook to prepare for the motorcycle demo ride which included finding a route that fit within Harley-Davidson's parameters, requiring the lead and rear motorcycle riders to be experienced, requiring all participants be able to safely operate a motorcycle, have a current valid motorcycle license, and wear appropriate safety gear.

Jones rejected the initially suggested route because it was rough, bumpy, and had curves and potholes. He ultimately decided on an eleven-mile route that included only right turns. It mostly consisted of country roads where the speed limits ranged from thirty-five miles per hour to fifty-five miles per hour. Jones described the route:

> It had a lot of straight highways, and then the service road coming back in had a long sweeping, easy to make curves in it, a couple of them, so it gave them a mix of the different riding situations they would get into. And also the beginning of it gave them a little bit of city riding, because it made a right out of the dealership, went to the next road, made a right, and you come down there and run a little bit of Main Street and then over the bridge and out in the country.

Jones, along with the lead and trail riders, tested the selected route between six and seven times to make sure that no hazards existed on the road for the demo

---

[2] Plaintiffs made similar claims against Harley-Davidson Motor Company, Inc. in *Doucet v. Alleman*, 15-61 (La.App. 3 Cir. 08/25/15), __ So.3d __, in which we affirmed the grant of summary judgment in Harley-Davidson's favor.

riders. Through deposition testimony, Jones said he had coordinated numerous other rides. In a 2005 ride in Missouri, one of the participants was killed when he took his hand off of the motorcycle to point out a black spot on the pavement and veered into oncoming traffic. Jones also described another incident in Houston in which a participant rider was injured when he flipped the bike he was test riding because he slammed on his brakes.

Jones said only the lead and trail participants wear safety vests so that they stand out to the participant riders in case of separation. He said the participant riders would not know who to follow if all of the participant riders were wearing vests. Jones said he has only had to obtain a permit once in order to erect a tent at a dealership. He also said that he has only ever had to have a police escort once in New Jersey because of congestion and traffic in the area.

Alleman's own testimony is the best evidence that nothing Jones could have done would have prevented this accident. Regardless of whether the riders wore safety vests, had special headlights, had special escorts, or had a permit, Alleman would have been distracted merely by his interest in motorcycles as a motorcycle enthusiast. We agree with Jones that plaintiffs have failed to show that they will be able to meet their burden of proving that anything he could have done would have prevented Alleman's distraction.

As a panel of this court found in the suit against Harley-Davidson, the affidavit of Michael J. Matthews, the plaintiffs' "expert," is insufficient to overcome the fact that they will be unable to meet their burden of proof. The trial court limited Matthews' testimony to lay opinion testimony. As a panel of this court previously found, we accord it little weight. Simply, Matthews' opinion that

6

had the motorcycles been more conspicuous, the accident could have been avoided, is not supported by the facts.

We agree with the trial court that the legal cause of this accident was Alleman's actions. The ride was on a public road that is intended for use by all motorists. Increased conspicuousness would not have deterred Alleman's distractions. Neither police patrols nor permits would have prevented Alleman from being distracted by the motorcycles. There was no evidence that any further precautionary measures taken by Jones would have prevented Alleman from running off the road. Moreover, Alleman's state of intoxication is irrelevant to the analysis of the duty/risk formula as applied to Jones.[3] Simply, Jones' duty cannot extend to this type of harm in the manner in which it arose—a motorcycle enthusiast who had taken a Xanax at 7:00 a.m. and drank a beer at 9:30 or 10:00 a.m. that morning would be so distracted by the motorcycles that he ran off the road and overcorrected, veering into the lane killing a demo-ride participant. Furthermore, it is not a reasonably foreseeable occurrence.

Plaintiffs argue that accidents of all kinds on the roadway are reasonably foreseeable. While that is true, it cannot be the basis to impose liability on an event coordinator for the negligent acts of an individual. The overriding social policy of allowing people freedom to drive on the road, as motorcycle groups often do, cannot be outweighed by the fact that one individual became so distracted that he ran off the road and killed a motorcycle rider. There are numerous distractions on the road that drivers must negotiate on a daily basis. It was Alleman's ultimate responsibility to not become so distracted that he ran off the road.

---

[3] The accident occurred at approximately 10:40 a.m. Alleman admitted to taking a prescribed Xanax at around 7:00 a.m. and drinking one eight-ounce bottle of Coors Light sometime between 9:30 and 10:00 a.m. the morning of the accident.

Plaintiffs will be unable to satisfy their burden of proving that Jones was negligent in selecting the demo route or in providing appropriate safety measures to the demo riders. They failed to offer any evidence that a safer, more appropriate route was available or that the conditions of the roadway chosen were unreasonably dangerous. Moreover, they failed to offer sufficient evidence that any of its suggested safety measures would have prevented Alleman's distraction.

Although we are extremely sympathetic to the plaintiffs for the tragic loss of their husband and father, we find that they will be unable to meet their burden of proving the essential factors of the duty/risk analysis. Accordingly, summary judgment was properly granted in favor or Jerry Jones.

## CONCLUSION

The summary judgment granted in favor of the defendant, Jerry Jones, is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants, Kim Doucet, et ux.

**AFFIRMED**.