## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-367

**JAKE CARMOUCHE, ET AL.**

**VERSUS**

**NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2022-9627
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

Daniel G. Brenner
David A. Karst, Jr.
Bolen, Parker, Brenner, Lee & Miller, Ltd.
709 Versailles Boulevard
Alexandria, LA 71315-1590
(318) 445-8236
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Gene Adam Lemoine
    Bayou Ready Mix, LLC

Robert I. Siegel
AsheLee S. Singleton
Gieger, LaBorde & Laperouse, LLC
701 Poydras Street, Suite 4800
New Orleans, LA 70139-4800
(504) 561-0400
COUNSEL FOR DEFENDANTS/APPELLANTS:
    National Union Fire Insurance Company of Pittsburgh, PA
    AIG Specialty Insurance Company

Jerold Edward Knoll
Jerold Edward Knoll, Jr.
Laura B. Knoll
Chancey Anna Kimble
The Knoll Law Firm, L.L.C.
P. O. Box 426
Marksville, LA 71351
(318) 253-6200
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Jake Carmouche and Katie Carmouche
    Individually and OBO Cole Carmouche,
    Bennette Carmouche, and Hayzel Carmouche

Aaron Broussard
Broussard Injury Lawyers
1301 Common Street
Lake Charles, LA 70601
(337) 439-2450
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Jake Carmouche and Katie Carmouche
    Individually and OBO Cole Carmouche,
    Bennette Carmouche, and Hayzel Carmouche

Dennis J. Phayer
Scott O. Gaspard
Burglass, Tankersley, Gaudin, Phayer, LLC
5213 Airline Drive
Metairie, LA 70001
(504) 836-0412
COUNSEL FOR DEFENDANT/APPELLEE:
    Brian Joseph Bordelon

**KYZAR, Judge.**

Defendants, Gene Adam Lemoine, his employer, Bayou Ready Mix, LLC, and its insurer, National Union Fire Insurance Company of Pittsburg, PA, appeal a grant of partial summary judgment in favor of Plaintiffs, Jake Carmouche and Katie Carmouche, individually and on behalf of their minor children, Cole, Bennette, and Hayzel Carmouche, holding that Mr. Lemoine was solely at fault in causing the vehicular accident which injured Plaintiffs. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

On the morning of November 22, 2021, Ms. Carmouche was taking her three children to daycare in Fifth Ward, Avoyelles Parish, Louisiana. She was stopped in the northbound lane of Louisiana Highway 1 (Hwy. 1) with her brake lights and turn signal on, waiting to turn left into the daycare. At the same time, Mr. Lemoine, who was operating a concrete truck owned by Bayou Ready Mix, LLC, was traveling northbound on Hwy. 1.

Approximately 400 feet to the south of the Carmouche vehicle, Kaitlyn Poret had stopped at the stop sign at the intersection of Cajun Lane with Hwy. 1. It was her intention to turn left onto the northbound lane of Hwy. 1 to take her daughter to the same daycare used by Ms. Carmouche. Ms. Poret could see the Carmouche vehicle, stopped with its turn signal on, to her left. To the right, Hwy. 1 had an incline which prevented Ms. Poret from fully seeing northbound traffic. Ms. Poret waited approximately sixty seconds to ensure that there was no oncoming traffic obscured by the hill. As she attempted to enter the northbound lane, she observed through her rear passenger window the concrete truck driven by Mr. Lemoine coming up from the bottom of the hill. To avoid being hit by the concrete truck, Ms. Poret drove across the northbound lane and onto the northbound shoulder of the highway. Ms. Poret indicated that the concrete truck did not slow down as it passed her. She

observed the concrete truck strike the rear of the Carmouche vehicle, knocking it forward and into the southbound lane of Hwy. 1, where it collided with a pickup truck driven by James McQuilling. As a result of this accident, Hayzel was killed and Ms. Carmouche, Cole, and Bennette suffered serious injuries.

Louisiana State Trooper Brian Coghlan responded to the accident. Trooper Coghlan questioned Mr. Lemoine about the accident. Mr. Lemoine told the trooper that as he topped the hill, a little black car pulled out in front of him and then pulled onto the northbound shoulder. He said that he was looking at the black car and then looked back to the road to see the Carmouche vehicle stopped in front of him.

Louisiana State Trooper James Landreneau performed an accident reconstruction and estimated that the concrete truck was traveling approximately seventy miles per hour in a fifty-five mile per hour speed zone. As a result of these findings, Mr. Lemoine was charged with one count of negligent homicide and three counts of negligent injuring.

Plaintiffs filed suit against Mr. Lemoine; Bayou Ready Mix, LLC (BRM); National Union Fire Insurance Company of Pittsburg, PA (National Union); Louisiana Farm Bureau Casualty Insurance Company, Mr. Lemoine's insurer;[1] State Farm Mutual Automobile Insurance Company,[2] the Carmouche's uninsured/underinsured insurer; Brian J. Bordelon,[3] the owner of BRM; and AIG Specialty Insurance Company, the general commercial liability insurer for BRM.

---

[1] Farm Bureau was dismissed from the suit via a motion for summary judgment based on policy exclusions.

[2] State Farm reached a settlement with Plaintiffs and was dismissed from the suit.

[3] After learning of Mr. Lemoine's accident, Mr. Bordelon allegedly instructed two of his employees to travel to the accident scene and remove the Micro-SD card from the concrete truck's on-board dash camera and to return it to him.

2

Plaintiffs filed a motion for partial summary judgment on the issue of liability, asserting the sole and exclusive liability and fault in causing this accident lay with Mr. Lemoine. Following a hearing, the trial court granted judgment in favor of Plaintiffs, holding that Mr. Lemoine's actions were the sole cause of the November 22, 2021, accident. The judgment on the motion was signed on April 12, 2023. A suspensive appeal was timely filed by Defendants, Mr. Lemoine, BRM, and National Union. Defendants assign the following three assignments of error:

1. The [trial court] committed legal error in weighing the supporting facts and conclusions contained within the sworn and admitted affidavit of accident reconstruction expert Dean Tekell.

2. The [trial court] committed legal error in the description of the duty owed, and the compliance with that duty, by motorist Kaitlyn Poret.

3. The [trial court] below improperly concluded that the Motion for Partial Summary Judgment was appropriate in that there was no genuine issue of material fact and that plaintiffs were entitled to Judgment as a matter law.

## OPINION

It is Defendants' position that, although Mr. Lemoine was at fault for causing this accident, he was not solely at fault. Defendants assert that Ms. Perot should also be assessed with some fault for causing a distraction to Mr. Lemoine when she cut across his lane of travel and proceeded onto the northbound shoulder of the roadway.

Defendants' first assignment of error asserts that the trial court committed legal error in weighing the supporting facts and conclusions contained in the affidavit of accident reconstruction expert, Dean Tekell. It is Defendants' position that the trial court found competing evidence in the record that it improperly weighed against the conclusions of Mr. Tekell. In assignment of error three, Defendants argue that the trial court improperly concluded that there were no material issues of fact which would preclude the granting of the motion for partial summary judgment.

3

Further, in assignment of error number two, Defendants assert that the trial court committed legal error in the description of the duty owed by Ms. Poret, and her compliance with that duty, arguing that Mr. Lemoine had been forced to narrowly avoid a collision with Ms. Poret because she failed to yield to his vehicle. As all the assignments relate to the propriety of summary judgment finding that Mr. Lemoine was solely at fault for the accident, and our appellate review is *de novo*, we address them together, and we do so under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate. *Hester v. Walker*, 20-1278 (La. 5/13/2021), 320 So.3d 362.

Summary judgment is proper "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Louisiana Code of Civil Procedure Article 966(D)(1) charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake. *Townley v. City of Iowa*, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323.

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. *Kumpe v. State*, 97-386 (La.App.

4

3 Cir. 10/8/97), 701 So.2d 498, *writ denied*, 98-50 (La. 3/13/98), 712 So.2d 882. We must then determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment as a matter of law. *Id.* Thus, "summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole issue remaining is the conclusion to be drawn from the relevant facts." *Id.* If the mover's supporting documentation is sufficient to establish that no genuine issue of material fact exists, the burden of proving the existence of a genuine issue of material fact shifts to the nonmoving party. La.Code Civ.P. art. 966(D)(1). To satisfy this burden of proof, the nonmoving party must not rely on the mere allegations or denials of his pleadings, but his response "must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B).

Louisiana Civil Code Article 2323(A) and (B) provides that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty[]" and this "shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability."

> The court is required to determine the fault of all persons causing or contributing to injury, death or loss, regardless of whether the person is a party to the action or a nonparty. La. C.C. art. 2323 A; *Foley v. Entergy La. Inc.*, 2006-0983 (La.11/29/06), 946 So.2d 144. The person alleging the fault of a nonparty must prove it by a preponderance of the evidence. *Woodbury v. State*, 03-13 (La.App. 5 Cir. 5/28/03), 848 So.2d 104, *writs denied*, 03-1830, 1832 (La.10/31/03), 857 So.2d 477, 478.

*State, Dep't of Transp. & Dev. v. Cecil*, 42,433, p. 5 (La.App. 2 Cir. 9/19/07), 966 So.2d 131, 134, *writ denied*, 07-2063 (La. 12/14/07), 970 So.2d 536.

5

The allocation of the negligence of a third party under La.Civ.Code arts. 2315 and 2323, is an affirmative defense. La.Code Civ.P. art. 1005. A "defendant who asserts an affirmative defense bears the burden of proof thereof." *Uddo v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 22-403, p. 7 (La.App. 5 Cir. 4/12/23), 361 So.3d 1123,1129, *writ denied*, 23-677 (La. 9/26/23), 370 So.3d 475.

Here, Defendants claim that the fault of Ms. Poret caused or contributed to the accident. To do so, Defendants must prove that Ms. Poret was negligent, that her negligence was a cause in fact of the accident and injuries to Plaintiffs, and that her conduct was a legal cause of the accident and injuries.

> Ordinary negligence claims under La.Civ.Code art. 2315 are governed by a duty/risk analysis and an examination of the particular facts in question. *Berthiaume v. Gros*, 15-116 (La.App. 3 Cir. 6/3/15), 165 So.3d 1275. A plaintiff must prove "1) that the defendant had a duty to conform his conduct to a specific standard of care; 2) that the defendant failed to do so; 3) that the substandard conduct was a cause-in-fact of the plaintiff's injuries; 4) that the conduct was a legal cause of the plaintiff's injuries; and 5) actual damages." *Id.* at 1278. Whether a defendant owes a duty to a plaintiff is a question of law. *Baheth v. Lafayette Parish Sch. Sys.*, 17-821 (La.App. 3 Cir. 4/25/18), 245 So.3d 1252. A plaintiff can support her claims with any law, whether it be statutory, jurisprudential or arising from general principles of fault. *Talbert v. Restoration Hardware, Inc.*, 17-986 (La.App. 1 Cir. 5/31/18), 251 So.3d 569.

*Bernard v. Ace Prop. & Cas. Ins. Co.*, 18-42, pp. 4–5 (La.App. 3 Cir. 10/3/18), 257 So.3d 223, 227.

Thus, Defendants' burden is to establish that Ms. Poret had a duty to the other parties, that she breached that duty, that the breach of that duty was a cause in fact of the accident, and that it was the legal cause of the accident. *Id.*

> Whether a defendant owes a plaintiff a duty is a question of law. **Posecai v. Wal-Mart Stores, Inc.**, 752 So.2d 762, 766 (La. 1999); see **Bursztajn v. United States**, 367 F.3d 485, 489 (5th Cir. 2004) ("Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'" (quoting **Dupre v. Chevron U.S.A., Inc.**, 20 F.3d 154, 157 (5th Cir. 1994))). There is a "universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to

6

another." **Boykin v. La. Transit Co.**, 707 So.2d 1225, 1231 (La. 1998). Louisiana courts elucidate specific duties of care based on consideration of

> various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.

**Posecai**, 752 So.2d at 766.

*Doe v. McKesson*, 21-929, pp. 7–8 (La. 3/25/22), 339 So.3d 524, 531.

While the question of Ms. Poret's potential fault and liability is at issue in this motion, we must also look to the fault and liability of Mr. Lemoine, as the driver of the rear-ending vehicle. Defendants concede that Mr. Lemoine, in fact, bears responsibility but assert that Ms. Poret is likewise at fault.

This court, in *LeBlanc v. Bouzon*, 14-1041, p. 3 (La.App. 3 Cir. 3/4/15), 159 So. 3d 1144, 1146 (alteration in original), stated:

> Louisiana has enacted laws that set forth duties imposed on drivers of following vehicles. Specifically, La.R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." A following motorist involved in a rear-end collision, therefore, is presumed to have breached this statutory duty. *Garcia v. Stalsby*, 11-350 (La.App. 3 Cir. 12/14/11), 78 So.3d 873, *writ denied*, 12-422 (La. 4/9/12), 85 So.3d 703. The following motorist can rebut this presumption "by demonstrating that he or she had his car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances[.]" *Id.* at 877.

When the presumption of liability applies to the following motorist, the following motorist, to escape liability, has the burden of proving, "that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance, or that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid." *Mealey v. Lopez*, 16-77, p. 5 (La.App. 5 Cir.

7

5/26/16), 193 So.3d 539, *Taylor v. Voigtlander*, 36,670 (La.App. 2 Cir. 12/11/02), 833 So.2d 1204.

Applying this law to the undisputed material fact that Mr. Lemoine's vehicle rear-ended the Carmouche vehicle, the presumption of negligence is clearly invoked. To exonerate himself from liability, or to lessen his fault, he must show that he closely observed the rear-ended vehicle and that he had his vehicle under control. Mr. Lemoine can also avoid liability, in whole or in part, by establishing that either Ms. Carmouche or Ms. Perot caused a sudden emergency:

> Under the sudden emergency doctrine, there is an exception to the general rule that a following motorist is presumed negligent if he collides with the rear of a leading vehicle. This doctrine provides that a following motorist will be adjudged free from fault if the following motorist is suddenly confronted with an unanticipated hazard created by a forward vehicle, which could not be reasonably avoided, *unless the emergency is brought about by his own negligence. Domingo* [*v. State Farm Mut. Auto. Ins. Co.*, 10-264 (La.App. 5 Cir. 11/9/10),] 54 So.3d [74,] 80 (emphasis added); see also *Hadley v. Doe*, 626 So.2d 747 (La.App. 5th Cir. 1993). The sudden emergency doctrine clearly contemplates a situation of sudden, imminent and unexpected peril that is not created by the person faced with it. The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. *Dick v. Phillips*, 253 La. 366, 218 So.2d 299 (1969).

*Mealey*, 193 So.3d at 545.

> The rule of sudden emergency, however, cannot be invoked by one who has not used due care to avoid the emergency. *Anderson v. May*, 01–1031 (La.App. 5th Cir.2/13/02), 812 So.2d 81. The sudden emergency doctrine is only applicable to the standard of conduct after an emergency has arisen. *Id.* It does not apply to lower the standard of care required of motorists before the emergency occurs. *Id.* The fact that the second driver is able to see and avoid an emergency situation ahead sets the standard of care applicable to the other following drivers. *Anderson v. May, supra; Potts v. Hollier*, 344 So.2d 70 (La.App. 4th Cir.1977). Moreover, the law charges the driver with having seen what he should have seen and subsequent events are judged as though he did see what he should have seen. *Stephens v. Fuller*, 39,918 (La.App. 2d Cir.6/29/05), 907 So.2d 917; *Duncan v. Safeway Ins. Co. of Louisiana*, 35,240 (La.App. 2d Cir. 10/31/01), 799 So.2d 1161.

*Ebarb v. Matlock*, 46,243, pp. 7–8 (La.App. 2 Cir. 5/18/11), 69 So.3d 516, 521, *writ denied*, 11-1272 (La. 9/23/11), 69 So.3d 1164.

8

In support of their motion for summary judgment, Plaintiffs submitted the deposition testimony of Trooper Coghlan, the primary officer assigned to the crash. Trooper Coghlan noted that there were 205 feet of rear skid marks made by the concrete truck's left rear tire and 204.3 feet of right-rear tire skid marks. Of these, 105 feet of the skid marks were before the point of impact with the rear end of the Carmouche vehicle.

According to Trooper Coghlan's deposition testimony, Ms. Poret indicated that as she made a left turn onto the northbound lane of Hwy. 1, she observed the concrete truck approaching her from behind at a high rate of speed, she pulled to the northbound shoulder, and then she observed the concrete truck strike the Carmouche vehicle, which was stopped with its turn signal on. Trooper Coghlan also testified that Mr. Lemoine advised him that as he topped the hill in the northbound lane, a black car pulled out in front of him and went to the northbound shoulder. That Mr. Lemoine was looking at the black car, and when he looked back to the road, he saw the Carmouche vehicle stopped in front of him. He put on his brakes and tried to maneuver to avoid impacting the car. Trooper Coghlan testified that Ms. Poret did not contribute to the accident and that Mr. Lemoine was solely at fault in causing the accident.

Trooper Landreneau, the primary accident reconstructionist for LSP Troop E, testified in his deposition that, according to his calculations, the cement truck was traveling at a speed of seventy-five miles per hour prior to braking and was traveling at sixty-four miles per hour at impact. Trooper Landreneau stated that even if the Poret vehicle had distracted Mr. Lemoine, that did not relieve him of his obligation to maintain his attention to, and ensure that he could stop for, any traffic in front of him.

9

Ms. Poret testified in her deposition that she was on her way to drop off her child at the same daycare as Ms. Carmouche. To do so, she had to turn left onto Hwy. 1 from Cajun Lane. She came to a complete stop at the stop sign at the end of Cajun Lane and waited for traffic to clear before turning north onto the highway. The intersection of Cajun Lane with Hwy. 1 is at the crest of a hill for northbound traffic, obscuring visibility for motorists attempting to turn onto the highway. The traffic was heavy that morning. Ms. Poret saw the Carmouche vehicle to her left, stopped in the northbound lane of the highway with her turn signal activated, waiting for traffic to clear before turning left into the daycare.[4]

Ms. Poret waited some sixty seconds before turning onto the highway, to account for northbound traffic approaching the crest of the hill as well as waiting for southbound traffic to clear. She then described what happened when she began her left turn left onto Hwy 1:

> The nose of my car was going into my lane where I was supposed to be going, which would be the right lane, okay? So I was going into it, and like the nose of my car was probably crossing the yellow line, and I look and the truck is big, so you can see the top of the truck. I saw the white -- the top of the cab and then the big old round thing of the concrete part. You could see it coming up from the bottom of the hill, so I was like oh, crap. So I hurried up and I got onto the shoulder. I didn't even go onto my right lane. I didn't even go behind[.]

She proceeded to pull all the way off the roadway onto the shoulder of the highway allowing the truck to pass her:

Q. Okay. So at the point you see the vehicle, where does your vehicle go?

A. Shoulder.

Q. Immediately?

A. Immediately.

---

[4] At the time, she did not know that it was actually Ms. Carmouche and her children, only learning so after the crash.

10

Q. Okay.

A. Shoulder -- really mostly grass because I was trying to get out of the way because I knew it was a big truck, because if you could see the cab of the truck right there, I mean it was a big truck. And I mean I've been around trucks like my whole life, so I mean, yeah.

Q. So you never brought your vehicle to a stop on Highway 1 at all, did you, before the impact?

A. Before I -- whenever I saw him and got onto that shoulder, I stopped, and then watched it happen. Whenever I got onto the shoulder -- I was on like a ditch kind of thing, so I was sideways. So I was probably -- my driver's side tires was on the shoulder and my other side was in the grass.

She then described what she saw after she pulled off the roadway onto the shoulder:

Okay. So I'm sitting and I'm watching him come up, letting -- because like I said, I moved out of the way and maybe he'll come up and he'll slow down and be like okay, you know, and I'll just get behind him. That was my plan. And I was watching him, and he wasn't slowing down, and he wasn't slowing down, and I was just saying oh, my God, oh, my God, he's not slowing down, and then he hits her.

Ms. Poret identified a video taken from her cell phone of the inside of her car on the morning of the accident. According to Ms. Poret, she was attempting to capture images of her daughter in the back child seat. The video captures the moments before and just after the crash from the perspective of the inside of Ms. Poret's vehicle.

The video was introduced by Plaintiffs as part of their summary judgment evidence. It has been reviewed by this court and captures Ms. Poret pulling out onto and across the highway and then onto the shoulder. Approximately six to eight seconds after pulling onto the shoulder, she begins to scream, "Oh my God, Oh my God," in response to the collision of the truck with the Carmouche vehicle and the other oncoming pickup.

11

Ms. Poret testified that Mr. Lemoine talked with her at the accident scene. She recalled the first thing he said to her:

> And he said man, I'm going to get the biggest F-ing ticket of my life. I said you better pray to God nobody is dead in that car because we didn't know she died yet, and I think after that, he had walked off. But that, specifically that's what I really remember. He said worrying about a ticket, and he just caused like a three car accident.

Based on the clear evidence, Mr. Lemoine was at fault in rear-ending the Plaintiffs. We now address whether any fault is attributable to Ms. Poret.

In opposition to Plaintiffs' motion, Defendants submitted the affidavit of Mr. Tekell, an accident reconstructionist. Mr. Tekell estimated the speed of the concrete truck at impact to be between forty-five to fifty-eight miles per hour. Mr. Tekell also surmised that Ms. Poret's action of pulling into the path of Mr. Lemoine distracted him and directly contributed to the ultimate cause of the accident.

Defendants contend that the affidavit of Mr. Tekell also establishes fault on behalf of Ms. Poret, or at least establishes a material issue of fact. Defendants claim that the trial court inappropriately weighed Plaintiffs' evidence against Mr. Tekell's affidavit in deciding the issue.

To the contrary, Plaintiffs contend that there is no material issue of fact, and any opinions Mr. Tekell may have expressed as to Ms. Poret's fault are conclusory allegations that are vague and not supported by sufficient facts. Plaintiffs assert that even though the speed calculations at the time of impact by Mr. Tekell differ from those of Trooper Landreneau, there is still no material issue of fact because the speed of the concrete truck is of no consequence regarding the fault of Mr. Lemoine. The sole cause of the accident was Mr. Lemoine's failure to keep a proper lookout for vehicles in front of him and to avoid rear-ending Plaintiffs' vehicle.

Regarding the role Ms. Poret had in causing this accident, Mr. Tekell, in paragraph nine of his affidavit, opined:

12

Appearer Dean Tekell has also preliminarily evaluated the potential role of Katelyn Poret, in her actions in pulling into the path of the oncoming cement truck, operated by Gene Lemoine, in the seconds prior to the impact. After review of her deposition testimony, and the video that was attached to her deposition, and other information outlined above, it is the opinion of Dean Tekell that the actions of Katelyn Poret directly contributed to the ultimate cause of the accident between the Bayou Ready Mix vehicle and the Carmouche vehicle, by carelessly pulling her vehicle into the path of the oncoming cement truck, and creating a momentary distraction for the driver of the cement truck. That distraction, caused by driver Poret, contributed to the failure of driver Gene Lemoine to appreciate the presence of the stopped Carmouche vehicle and to allow him adequate time to either bring his vehicle to a stop behind the Carmouche vehicle or to take evasive actions that would have avoided the impact with the back of the Carmouche vehicle.

Therefore, the question this court must address is whether Mr. Tekell's affidavit created a material issue of fact as to whether Mr. Lemoine was solely at fault for causing this accident. In considering a motion for summary judgment, the "court should not consider the merits, make credibility determinations, evaluate testimony[,] or weigh evidence." *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 04-1460, 04-1466, p. 11 (La. 4/12/05), 907 So.2d 37, 48. To defeat this motion and establish a material issue of fact, Mr. Tekell's "opinion must be more than a conclusory assertion about ultimate legal issues." *See Nelson v. Shelat*, 54,099, p. 6 (La.App. 2 Cir. 8/18/21), 325 So.3d 1170, 1173, *writ denied*, 21-1354 (La. 11/17/21), 327 So.3d 997.

Here, the trial court found that the affidavit was conclusory in its opinion that Ms. Poret was a legal cause of the accident through its statement that "Poret, carelessly pulled her vehicle into the path of the oncoming cement truck, and created a momentary distraction[.]" Specifically, the trial court concluded that the opinion "simply is not substantiated by any of the evidence." As held by the trial court, "the actions of Poret, while they contributed to the accident in that Lemoine was distracted, these actions did not amount to any breach of a legal duty." We agree,

13

finding no factual basis for the conclusions of Mr. Tekell that Ms. Poret bears some legal responsibility for this accident.

In *Kinch v. Our Lady of Lourdes Regional Medical Center*, 15-603 (La.App. 3 Cir. 12/9/15), 181 So.3d 900, the plaintiff alleged that the emergency department physician's failure to diagnose and treat an infection with antibiotics resulted in damages. The defendants moved for summary judgment, asserting that the plaintiff did not have sufficient expert evidence to establish that the defendants breached their standard of care and caused plaintiff's injury. In opposition to the motion, the plaintiff retained an expert medical provider and submitted an affidavit opining that the lack of care rendered to the plaintiff was a breach of the standard of care and that breach increased morbidity.

In concluding that the expert's affidavit was insufficient to produce factual support to establish that the plaintiff would be able to carry his burden of proof at trial, this court stated:

> Dr. Stinson's affidavit is conclusory in that it merely states that Dr. Godeaux breached the standard of care and fails to specifically address causation. *See Tillman v. Eldridge*, 44,460, p. 15 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 79 ("[An] affidavit that is merely conclusory is insufficient to serve as evidence; affidavits that are devoid of specific underlying facts to support a conclusion of ultimate 'fact' are not considered legally sufficient to defeat summary judgment.").
>
> . . . .
>
> Further, we find that Dr. Stinson's report is speculative such that it is insufficient to satisfy Mr. Kinch's burden of proof. *See Foster v. Patwardhan*, 48,575, 48,712 (La.App. 2 Cir. 1/22/14), 132 So.3d 495, *writ denied*, 14-614 (La.4/25/14), 138 So.3d 1233. Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists. *Scott v. City of Shreveport*, 49,944 (La.App. 2 Cir. 6/24/15), 169 So.3d 770. Dr. Stinson concludes in her letter report that it was a breach of the standard of care for an emergency room physician to fail to treat the patient's infection with antibiotics. However, she previously stated that it would be appropriate to prescribe antibiotics "*in many cases*" (emphasis added) and does not address whether those cases in which

14

antibiotics would not be prescribed apply to the facts of this case. Finally, Dr. Stinson asserts that Dr. Godeaux's failure to prescribe antibiotics "certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate." We observe that Dr. Stinson offers no objective basis for this opinion[.]

*Id.* at 905–06 (first alteration in original).

In *Simon v. Allen Oaks, LLC*, 20-5 (La.App. 3 Cir. 6/10/20), 298 So.3d 881, the family of a nursing home resident brought a malpractice action against the nursing home asserting that the nursing home's negligence resulted in the resident's death from bed sores, infection, and amputation. The plaintiff's expert submitted an affidavit in opposition to a motion for summary judgment filed by the nursing home, which stated that the nursing home failed to treat the decedent within the proper standard of care and that this failure was the proximate cause of death. The affidavit included the expert's qualifications and a list of the evidence the expert had reviewed, however, it provided no facts to substantiate the expert's opinion that the nursing home breached the proper standard of care or that this breach was the proximate cause of the resident's injuries.

In affirming the trial court's grant of summary judgment, this court stated:

Similarly, in *Baez* [*v. Hosp. Serv. Dist. No. 3 of Allen Parish*, 16–951 (La.App. 3 Cir. 4/5/17),] 216 So.3d 98, the defendants filed a motion for summary judgment seeking dismissal of the plaintiff's medical malpractice claim filed on behalf of Mr. Baez, who was deceased. In opposition, the plaintiff submitted the affidavit of an expert medical provider. This court concluded the affidavit was insufficient to defeat summary judgment because "[w]hile [the expert] alleges that [the defendants] violated the standard of care in treating Mr. Baez, she never specifically relates how these violations caused Mr. Baez's death." *Id.* at 104.

We agree with the trial court in the instant case that Ms. Trahant's affidavit was "woefully insufficient" to defeat summary judgment. It is speculative and conclusory, and it is devoid of any underlying and supporting facts regarding a standard of care that was allegedly breached, actions or inactions on the part of Allen Oaks that were in breach of any such standard of care, or how any such breach caused any alleged injury to Mr. Simon. Therefore, we find no error in the trial court's summary judgment dismissal of Plaintiffs' case.

*Id.* at 887 (first alteration added).

In *Doucet v. Alleman*, 15-255 (La.App. 3 Cir. 10/7/15), 175 So.3d 1112, a motorcyclist was fatally injured while participating in a motorcycle demonstration ride when an oncoming motorist veered off the road, overcorrected, and struck the motorcyclist. A negligence action was brought by the motorcyclist's widow and son against, among others, the motorist and the coordinator of the demonstration ride. The motorist asserted that he lost control of his vehicle because he was distracted by the motorcycle demonstration ride. The basis for the claim against the event coordinator was that he failed to take reasonable safety measures to protect the event's participants. A motion for summary judgment was filed by the event coordinator asserting that he was not at fault for the accident. In opposition to the motion, the Plaintiffs submitted the affidavit of a motorcycle safety consultant who felt that if the motorcycles had been more conspicuous, the accident could have been avoided. Summary judgment in favor of the event coordinator was granted by the trial court.

This court, in affirming the trial court's judgment, agreed that the legal cause of this accident was the motorist's actions of being distracted and losing control of his vehicle. We determined that the opinion of the plaintiff's expert that the accident could have been avoided if the motorcycles had been more conspicuous was not supported by the facts, because the motorist himself testified that even if the motorcycles had an escort with flashing lights, he still would have been distracted by them because of his interest in motorcycles. As stated by this court, "There are numerous distractions on the road that drivers must negotiate on a daily basis. It was [the motorist's] ultimate responsibility to not become so distracted that he ran off the road." *Id.* at 1117.

16

The closest factual situation supporting the conclusion that Ms. Poret bears no legal responsibility for the accident appears in *Roberts v. Rudzis*, 13-538 (La.App. 1 Cir. 5/28/14), 146 So. 3d 602, *writ denied*, 14-1369 (La. 10/3/14), 149 So.3d 797. There, the plaintiff slowed and came to a stop behind stalled traffic on a roadway. After the plaintiff stopped her vehicle, the vehicle immediately behind her suddenly veered off the roadway into a parking lot to avoid striking the plaintiff's vehicle. The plaintiff's vehicle was then rear-ended by a third vehicle that had been following the second vehicle. The plaintiff filed suit against both following drivers. The trial court held that the second driver was one hundred percent responsible for the accident because his "reckless driving in leaving the road very unexpectedly [created] a hazardous condition." *Id.* at 608 (alteration in original).

In reversing the liability against the second driver, the first circuit noted that the following motorist in a rear-end collision is presumed to be negligent. Although there was testimony by a passenger in the third vehicle that the second vehicle blocked the third vehicle's view of the plaintiff's vehicle, the driver of the third vehicle did not testify, and therefore, there was no way to establish the third driver's perceptions and what this driver actually observed. Because the third driver, who rear-ended the plaintiff, was presumed to be at fault, it was not enough for the plaintiff to show that the second driver's actions might have been a contributing factor. The plaintiff was required to prove that the second driver's actions were more likely than not a substantial factor in causing the accident. Accordingly, the court held that there was no reasonable factual basis for determining that the second driver's actions were a cause-in-fact of the accident.

In *Robinette v. Old Republic Insurance Co.*, 17-79 (La.App. 3 Cir. 10/4/17), 229 So.3d 61, *writ denied*, 17-1871 (La. 1/9/18), 231 So.3d 648, the defendant driver and his insurer argued that the plaintiff passenger bore some percentage of

17

comparative fault for the accident, stating that she began screaming, yelling, and cursing at the driver "in a very insulting and distracting manner" immediately prior to the accident, and those actions made her liable, either solely or in part, as she distracted the driver. *Id.* at 65. As in the present case, the plaintiff filed a motion for summary judgment, asserting that the defendant was solely at fault in causing the accident. The defendant countered that summary judgment was not appropriate because the parties offered differing accounts of what happened, and therefore, material facts remained in dispute. This court noted that the plaintiff did not strike the defendant, encourage him to take his eyes off the road, or do anything to impede his operation of the vehicle other than screaming, yelling, and cursing. We concluded that the plaintiff, by distracting the driver, did not breach any duty owed to him. "A motorist has a duty of care which includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards . . . . It is the primary duty of the driver to obey the law and avoid distractions." *Id.* at 68.

In affirming the trial court's grant of the motion for summary judgment, this court stated:

Zeno undisputedly put the vehicle into reverse and pressed down on the accelerator with no urging or assistance from Robinette. Pursuant to these facts, there is simply no basis in Louisiana law upon which to impose passenger liability. Once the motion for summary judgment has been properly supported by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. *Hyman v. E. Jefferson Gen. Hosp.*, 04-1222 (La.App. 5 Cir. 3/1/05, 4), 900 So.2d 124, 126; *Foster v. Consolidated Employment Systems, Inc.*, 98-948 (La.App. 5 Cir. 1/26/99), 726 So.2d 494, *writ denied*, 99-0523 (La. 4/30/99), 741 So.2d 14. There must be a genuine or triable issue of relevance and materiality on which reasonable persons could disagree in order to defeat such a motion. *Rowley v. Loupe*, 96-918 (La. App. 5 Cir. 4/9/97), 694 So.2d 1006, 1008. In the current case, the relevant material facts are before the court and undisputed. As such, the grant of summary judgment on the issue of liability was proper as a matter of law.

*Id.* at 68–69.

18

There is similarly no factual support for the opinion that Ms. Poret breached a legal duty to Plaintiffs or that her actions were a substantial cause of the accident. She safely crossed the roadway and entered onto the shoulder of the northbound lane of Hwy. 1. From the uncontroverted summary judgment evidence, Mr. Lemoine did not have to take any evasive action, did not use his brakes or slow down when he saw her vehicle, but continued onward slamming into the rear of Plaintiffs' vehicle after only applying his brakes some 105 feet prior to the point of impact. While Defendants claim that Ms. Poret's maneuver caused a distraction, "[m]any things can distract a motorist, but a motorist has the duty to keep his attention focused on the roadway." *Hager v. State, ex rel. Dep't of Transp. & Dev.*, 06-1557, pp. 22–23 (La.App. 1 Cir. 1/16/08), 978 So.2d 454, 469, *writs denied*, 08-347, 08-385 (La. 4/18/08), 978 So.2d 349.[5]

As noted in the present case by the trial court in its reasons for ruling, "[a]t no point in any statement attributed to Lemoine did he claim that Poret did something wrong or breached any duty. Lemoine saw Poret pull her car onto the shoulder and made the decision to look at her car instead of to keep his focus ahead." We agree. Further, as stated by Trooper Coghlan in his deposition, "Ms. Poret did not contribute to the accident, and the sole fault in causing the accident was the conduct of Mr. Lemoine."

The opinion of Mr. Tekell that Ms. Poret causing a momentary distraction to Mr. Lemoine was a cause of the accident, is speculative and conclusory at best. It is

---

[5] *See also Clark v. Mitchell*, 99-719,99-720 (La.App. 1 Cir. 5/12/00), 760 So.2d 1236, 1236, *writ denied*, 00-2374 (La. 11/3/00), 772 So.2d 660 (distraction by the construction lights); *Paul v. La. State Emps' Grp. Benefit Program*, 99-897 (La.App. 1 Cir. 5/12/00), 762 So.2d 136 (herd of camels in a pasture); *Jackson v. Scott Truck & Tractor*, 31,933 (La.App. 2 Cir. 5/5/99), 736 So.2d 987 (pedestrian on the side of the road waving her arms); *Allen v. Roadway Express*, 31,628 (La.App. 2 Cir. 2/24/99), 728 So.2d 1015 (wrecked vehicle and billboard with a photograph of teenage accident victim placed on roadside to warn other teenagers).

19

devoid of any facts or evidence that this momentary distraction of Mr. Lemoine by the actions of Ms. Poret in anyway contributed substantially to the failure of Mr. Lemoine to maintain a proper lookout for the vehicle ahead of him, to maintain control of his vehicle, and to stop his vehicle before striking Plaintiffs' vehicle.

As set forth above, a momentary distraction, in and of itself, does not rise to the level of a "sudden emergency", as this doctrine is only applicable to the standard of conduct after an emergency has arisen and does not lower the standard of care required of motorists before the emergency occurs. *Ebarb v. Matlock*, 46,243, p. 8 (La.App. 2 Cir. 5/18/11), 69 So.3d 516, 521, *writ denied*, 11-1272 (La. 9/23/11), 69 So.3d 1164.

There is no dispute that Ms. Poret pulled her vehicle to the shoulder and not on the roadway, and posed no threat to Mr. Lemoine. According to the unopposed evidence from Ms. Poret, the concrete truck did not slow down as it passed her while the Carmouche vehicle was visible to the north. The unopposed evidence from the deposition testimony of Trooper Coughlin is that the skid marks caused by braking of the truck did not start until the truck was only approximately 105 feet from the Carmouche vehicle. Because of the pending criminal charges against Mr. Lemoine, he refused to provide any deposition testimony. Therefore, there is nothing in the record to indicate that Ms. Poret was responsible for Mr. Lemoine not seeing the Carmouche vehicle ahead in the roadway in time for him to stop.

As noted above, the posted speed limit for the roadway where the accident occurred was fifty-five miles per hour. Trooper Landreneau opined, based on his observations and calculations from the skid mark and collision data, that Mr. Lemoine was travelling seventy-five miles per hour prior to braking and was traveling at sixty-four miles per hour at impact, well above the posted limit even after braking and colliding with the Carmouche vehicle. Defendants' own expert,

20

Mr. Tekell, testified that Mr. Lemoine was travelling between forty-five to fifty-eight miles per hour at the time of the collision, after braking over 100 feet before impact. Even at the high end of this latter range, Mr. Lemoine was exceeding the speed limit at the time of the collision. Applying either of these opinions, clearly Mr. Lemoine was speeding prior to braking his vehicle after he saw the Carmouche vehicle stopped ahead. In addition, Ms. Poret testified that Mr. Lemoine did not slow down as he passed her while she was on the shoulder of Hwy. 1, nor did he take any evasive action. Simply stated, her actions did nothing to cause him to fail to maintain control of his vehicle, or to keep a proper lookout for cars ahead of him in the same lane of travel.

Based on the evidence in support of the motion for partial summary judgment, Plaintiffs established the lack of support for one or more of the elements of Defendant's burden of proof, that Ms. Poret was a substantial legal cause of the accident in question. Thus, the burden shifted to Defendants to establish a material issue of fact or that they can meet their burden of proving at trial that Ms. Poret bears some legal responsibility for the accident. We conclude that Defendants failed to put forth evidence showing a material issue of fact negating Mr. Lemoine's sole fault as the cause of the accident. Accordingly, the judgment granting partial summary judgment in favor of Plaintiffs as to liability is affirmed.

## DECREE

For the forgoing reasons, the judgment of the trial court granting the motion for partial summary judgment in favor of Jake and Katie Carmouche, holding that Mr. Lemoine was solely at fault in causing this accident, is affirmed. Costs of this appeal are assessed to Gene Adam Lemoine, Bayou Ready Mix, LLC, and National Union Fire Insurance Company of Pittsburg, PA.

**AFFIRMED.**

21